# Bergey's Appeal.

1. Money of a wife was paid by her debtor, the husband took it, counted it in her presence but did not give it to her; he afterwards invested it in real estate. He gave her no writing at the time to secure it, but eight or nine years afterwards gave her a judgment-note for it. *Held*, not proof of a gift by the wife.

2. She was not bound to attempt to rescue it from her husband or proclaim that it was not a gift; she might rest on the idea that he received it to take care of it for her.

3. Not being a gift the husband received it as trustee for his wife and equity would compel him to account to her for it.

4. If the Statute of Limitations might be a bar, the husband was not bound to interpose it in favor of creditors.

5. If there had been a gift of the money when the husband received it, he could not afterwards change it into a loan.

6. The Married Woman's Act of 1848 is an enabling or enlarging act, and such acts should be administered in the spirit of the rights enlarged by them.

January 21st 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., absent. WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Montgomery county*: No. 206, to January Term 1869.

In the court below, the proceedings were the distribution of the balance of the proceeds of the sheriff's sale of certain real estate, sold under a levari facias at the suit of Peter B. Boorse against Jacob Bergey and Deborah Bergey his wife; the amount for distribution being $1452.13. The fund arose from the sale of two tracts of land, spoken of in the proceedings as the Snyder and Boorse tract and the Price tract. The execution under which they were sold was on a mortgage given by Bergey and his wife, and the sum for distribution was the balance after payment of the mortgage. The claimants on this fund were judgment-creditors of Jacob Bergey on the one hand, and Mrs. Bergey herself on the other, she alleging that the real estate was her own separate property, and that her husband had no interest in it. The auditor, A. B. Longaker, Esq., reported, that in 1852 Bergey purchased 63 acres of land for $3300; that about the same time Mrs. Bergey received from her guardian Abraham Landis $1500, and from her brother Charles Benner $180, which were due to her from her father's and mother's estates. "These two sums were paid to her at this time, or, according to her directions, to her husband; and appropriated by him with her assent in part payment of the purchase-money of said farm." This farm was afterwards sold, and Jacob Bergey became the owner of other real estate upon which he made valuable improvements, and up to January 1862 judgments had been entered against him to the aggregate amount of $15,000, including one in favor of Michael S. Croll,

[Bergey's Appeal.]

trustee of Deborah Bergey, for $2500, entered October 30th 1861, on a bond and warrant dated on the 29th.   On the 31st an execution was issued against Bergey, and his land was sold by the sheriff for $1700 to Solomon Snyder and Peter B. Boorse, creditors of Bergey, who had no lien, with the understanding that upon the payment of their debt—the purchase-money and interest and something for their expenses and trouble—it should be conveyed to Mrs. Bergey.   From the distribution of the proceeds of this sale Croll, as trustee of Mrs. Bergey, received the sum of $1052.44.   On the 1st of May 1862, Snyder and Boorse conveyed the land purchased at sheriff's sale for the consideration of $2325.   A purchase-money mortgage of $803.14 was given to Snyder and Boorse; $980, part of the amount ($1052.44) received by her trustee from the sheriff, was paid by herself, and the balance advanced by George Heydrick, a friend of Mrs. Bergey. Subsequently to this Boorse lent some money to Mrs. Bergey. On the 31st of December 1864, Henry G. Price conveyed to Mrs. Bergey a tract of land for the consideration of $788.12. After this time Boorse bought some personal property from Bergey, which was applied towards the payment of Mrs. Bergey's debt, and reduced it to $716.22, to secure which sum Mr. and Mrs. Bergey gave a mortgage on the Snyder and Boorse and the Price tracts of land, being the lands from which the fund for distribution arises.   It was urged before the auditor on behalf of Mrs. Bergey, that the judgment in favor of Croll as her trustee was conclusive on him, and he had not authority to inquire into its validity.   The auditor, however, decided that it was competent for him to make such inquiry on an allegation of *actual fraud*.   He further reported:—

"A judgment in her favor by a trustee can amount to nothing, unless it be established by clear and full proof that her separate estate constitutes the full consideration.

"This brings us to the 2d point submitted by Mrs. Bergey. That the testimony established a separate estate in Deborah Bergey, and that that estate formed the consideration of the judgment in her favor to her trustee Michael S. Croll.

"That Deborah Bergey soon after her marriage, and in the spring of 1852, was entitled to receive in her own right about the sum of $1680, is clearly shown by the evidence of Charles Benner and Abraham Landis.   That $1500 of this sum was paid in her presence, she surrendering the note of that amount held by her against Abraham Landis, and her husband picking up the money after payment, is also well established.   Did she make a gift of her inheritance to her husband, or did she loan it to him? Or did he receive it with her assent, and expend it according to her directions?   If she did not give it to him, or he did not receive it by her authority, and expend it according to her direc-

tions, it was not only her right, but her duty, to secure it by judgment against the estate of her husband, when she realized it was in jeopardy from his fast-approaching insolvency.

" When she has shown a separate estate in herself by clear and full proof, the requirements of the law as to her right to it are fulfilled. And when that estate passes into the hands of her husband, the law presumes he received it for her use, and to that extent he becomes her debtor. The burthen of proof that he received it as a gift, is then cast upon him who alleges it. A gift, I take it, is to be proven as any other fact, by positive testimony, or gathered from all the circumstances of the case.

" That the $1500 paid by Mr. Landis were received by the husband with her assent, and appropriated according to her directions, seems well established. Mr. Landis, on cross-examination, says: ' Deborah Bergey and her husband Jacob were together when I paid the money. Jacob picked up the money and counted it, and I think he didn't put it down again. * * * She held my note for it, and when I paid the money I got the note back.' * * * ' I know that Jacob Bergey at about this time had bought his father's farm, and he told me he would put the money in there. He said they wanted this money; they had bought this farm.' * * *

" Taking then the evidence of Abraham Landis and that of Charles Benner, the latter of which can have but little weight, we have the fact that Jacob Bergey received the inheritance of his wife about the year 1852; and according to her directions and with her assent invested it in the purchase of a farm bought from his father, &c. The circumstances attending this purchase, and the subsequent use of her money in part payment of the purchase (the whole consideration being $3300), negatives all idea or intention of a loan to her husband. At the time he received it we have no evidence of a promise of repayment; no note given; no part of the title of the purchase in her; no evidence of the payment of interest for its use. Some six years after this, when he had purchased considerable other real estate, and was dealing in horses, cattle, &c., we have his declarations that he would take care that his wife should not lose her money; he was at this time in a tight place, &c., and, also, a note of $2500 with confession of judgment, dated October, A. D. 1858, which declarations and note for the reasons hereafter given your auditor has rejected as inadmissible as part of the testimony. * * *

" I hold that the giving of the judgment of $2500 by Jacob Bergey to Michael S. Croll in trust for Deborah Bergey, had no sufficient consideration to support it, as the money received by him as her patrimonial estate had been some nine years previously invested by him in the farm purchased from his father with her assent, unaccompanied with a promise of repayment.

[Bergey's Appeal.]

"I further find, that at the time of the giving of this judgment Jacob Bergey was insolvent, and was at that time, and had been several years previously, engaged in a hazardous business.

"As the amount of her inheritance was only $1680, and was used with her assent and direction in the purchase of the farm in April 1852, if she were entitled to recover at all, it could be only the $1680, the original principal. Interest between husband and wife can only be recovered by express contract. If, therefore, he receives her money, and is liable to pay it back, no interest can be recovered, unless an express contract to pay interest be shown. Assuming, therefore, that Deborah Bergey was entitled to receive from her husband the $1680, it would be without interest. Was then the excess of $820 for which the judgment was confessed fraudulent? If it was not due it must have been fraudulent, because I cannot well see how it came to be added by mistake. If fraudulent, does it vitiate the whole judgment? At about the time it was given Jacob Bergey was 'in a tight place;' he had been buying a good deal of real estate without paying much on it, and from all the facts in the case was then insolvent, or at best hanging loosely on the verge of insolvency, with many judgments entered against him. * * *

"I also find, that even if Jacob Bergey was indebted to her for a bonâ fide loan of the money received by him as her inheritance, the addition of the $820 in excess of the amount received by him, rendered the whole judgment fraudulent.

"In arriving at these conclusions, I deem it just to say, that I reject the judgment-note of $2500, dated October 1858, upon the ground that it is not proven to have been executed at the time it bears date;·nor is its consideration shown to have been the separate estate of Deborah Bergey. It must also fall within the same category as the declarations of the husband, made long after the receiving of the money, as to his liability or intention of repayment.

"The declarations of Jacob Bergey, as given by several of the witnesses, are also rejected as inadmissible. * * *

"From all the facts as controlled by the cases heretofore examined, the auditor finds that the three tracts of land, the proceeds of which constitute this distribution, were not the separate estate of Deborah Bergey, but that they were at the time of the sheriff's sale the property of Jacob Bergey; the fund therefore will be distributed amongst his judgment-creditors in accordance with the priority of their lien."

The fund, after deducting the expenses of the audit, amounted to $1357.13, which the auditor awarded to the following judgments:—

J. R. Hunsicker, entered June 12th 1867, $337.42
Wm. P. Moyer,          "    Sept. 4th    "    173.45
Thos. N. Colder,       "    Oct. 5th     "    615.26
Jas. H. Smith,         "    Oct. 23d     "    187.55
C. G. Rosenberry,      "    Nov. 1st     "
          for $205.59, the balance of the fund,    43.45

Before the auditor, the testimony of Landis was, that he had about $1500 belonging to Mrs. Bergey, derived from her father's and mother's estates, which he had paid to her about the year 1850. On cross-examination the witness said:—"Deborah Bergey and her husband Jacob were together when I paid the money; Jacob picked up the money and counted it, and I think he didn't put it down again. I know that Jacob Bergey at about this time had bought his father's farm, and he told me he would put the money in there. He said that they wanted this money—they had bought this farm. They had been married about a year before I paid the money; she was single when I got this money; she held my note for it; when I paid the money I got the note back."

Charles Benner testified, that about 1855 "Jacob Bergey told me that he was dealing backwards and forwards, and that folks said to him he should be careful, and he said he would take care that his wife should not lose her money. He was at one time in a tight place, having purchased a good deal of property at Lederachville, and not having paid much on it, and it was at this time that he said his wife should not lose her money."

The note given by Bergey to his wife is as follows:—

"$2500.                                    . October 1858.

"Two years after date, I promise to pay to Deborah Bergey or order, Two Thousand Five Hundred Dollars, without defalcation, for value received. And I do hereby confess judgment therefor and release errors; and I do hereby also waive all stay of execution from and after the maturity of the above note, and all laws exempting property from execution; and agree that all my property and effects whatsoever may be taken in execution to pay the sum aforesaid.

"*Witness present,*                    "JACOB BERGEY."
"GEO. W. WILLIAMS."

Mrs. Bergey filed exceptions to the auditor's report. The exceptions were overruled and the report confirmed by the Orphans' Court, Chapman, P. J., delivering the opinion, in which after referring to the facts and authorities he says:—

"The facts before us that she acquiesced in the receipt by her husband of her money with a knowledge of the purpose to which it was to be at once applied, interposing no objection, but consenting thereto, and the purpose being to secure for herself and

family a home, place the case precisely within the rule laid down by the cases cited, and successfully rebut the presumption arising in the first place, that he received her money as her trustee. If, instead of a contribution towards the payment of the purchase-money for this land, her property had, with her consent, been applied by her husband to the purchase of furniture by him for the house, the case would have been the same. It follows, therefore, that at the time her husband executed a judgment-bond in favor of Croll, trustee of his wife, for $2500, he owed her nothing. That being insolvent, or on the eve of insolvency, he could not make a voluntary settlement upon his wife that would be valid, since the receipt by her of a portion of the proceeds of the sale made by the sheriff which were applied to the purchase of the property, which was conveyed to her in her own name, was the money of her husband, and she had nothing in the land, the proceeds of the sale of which are now in court.

" But even if it be conceded that the husband received the wife's money as trustee, and that the judgment for $2500 was valid, what claim has she to the fund in court? Could it be anything more than the difference, if any, between Boorse's judgment and the amount she actually paid toward the purchase of the two lots, the proceeds of sale of which are claimed by her husband's creditors? This property was sold under a mortgage given by her and her husband, to Peter B. Boorse, *for a debt of her own*. After the payment of it is she entitled to the balance of purchase-money or is she only entitled to receive the difference between what she actually paid and Boorse's judgment? The money that was applied to the payment of that she received the benefit of, as it went to the payment of her own debt, and if that is equal to what she put into the property she is entitled to nothing more; and this follows from the application of the doctrine laid down in the case of Stiver *v.* Baringer, 13 Wright 129. The cases differ mainly in the fact that the wife here paid *a part* of the consideration. If, however, a wife may secure a title to herself,· that will stand against the attack of her husband's creditors, by the payment of half the purchase-money accompanied by a mortgage for the balance, she may do so by the payment of an insignificant sum. The principle laid down in the case cited, when carried out, combats the one in hand. It forbids the purchase of real estate by a wife partly on credit on the ground that it is against public policy, for the reason that it enables the husband to conceal his property under the cover of the deed to the wife, and multiplies the difficulties in proving whose money is eventually used in the payment of the consideration. Judge Agnew says, 'to suffer a wife to purchase on credit is to open a wide door for fraud.' The vice is just as apparent where one-half the purchase-money is paid and a mortgage given for the balance, as where nothing is paid and a

mortgage given for the whole. The same opportunities for the perpetration of fraud and the concealment of the husband's property exist. Conrad v. Shomo, 8 Wright 193, does not militate against the view as adopted in this case. Judge Agnew says, 'The doctrine in favor of the wife was there carried to its extreme limit. It was shown the wife had ample means to pay for the property, which was not so with Mrs. Bergey.'

"As to the property purchased by her of Price for the consideration of between $700 and $800, the onus rested upon her to show from whence she derived the money. But there is no proof whatever that it came out of her own pocket. The presumption is, it belonged to her husband."

Mrs. Bergey appealed to the Supreme Court, and assigned for error that the court erred in refusing to decree to her the fund in court, and in decreeing it to the judgment-creditors of Jacob Bergey.

*G. W. Rogers* and *J. Boyd*, for appellant.—Before the Act of 1848 the husband had but a naked power over his wife's choses in action, which he was not bound to execute in favor of creditors: Skinner's Appeal, 5 Barr 263. Declarations of a husband are evidence when they relate only to the transmission to him by the wife of her property: Townsend v. Maynard, 9 Wright 198; Gray's Estate, 1 Barr 329. A disclaimer by the husband after conversion of her property will give the money to the wife: Gochenaur's Estate, 11 Harris 460; Grabill v. Moyer, 9 Wright 530. A subsequent bond to a trustee for the wife's money received by the husband is good against creditors: Gicker v. Martin, 14 Wright 138; Johnston v. Johnston, 7 Casey 450; Hatz's Appeal, 4 Wright 209. An auditor cannot inquire into the validity of a judgment: Leeds v. Bender, 6 W. & S. 315; Hauer's Appeal, 5 W. & S. 473; Lowber's Appeal, 8 Id. 387; Logue's Appeal, 10 Harris 50; Moore's Estate, 11 Wright 311; Snyder v. Christ, 3 Id. 499; Dyott's Estate, 2 W. & S. 557. Bona fides in transaction of husband and wife not overthrown by presumption: Tripner v. Abrahams, 11 Wright 220; Larkin v. McMullen, trustee, 13 Wright 29.

*C. Hunsicker, G. N. Corson* and *H. K. Weand*, for creditors, appellees.—The evidence that property was purchased by the wife must be accompanied by clear and full proof that she paid for it with her own separate funds: Barringer v. Stiver, 13 Wright 131. That Mrs. Bergey's separate estate was given to her husband is proved by the fact that she consented to its appropriation to land purchased in his name: Johnston v. Johnston, *supra*; Hinney v. Phillips, 14 Wright 384. An auditor may determine the ownership of an encumbrance: Souder's Appeal, 7 P. F. Smith 498.

[Bergey's Appeal.]

The purchase from Snyder and Boorse was on credit, and is therefore no protection to the wife as against the husband's creditors: Curry v. Bott, 3 P. F. Smith 400. The finding of the auditor is conclusive without clear error: Chew's Appeal, 9 Wright 228; Mahler's Appeal, 2 Id. 220.

The opinion of the court was delivered, February 5th 1869, by

Thompson, C. J.—The material question in this case, is as to the character in which Jacob Bergey received his wife's money. There was no dispute that he did receive it, amounting to some $1680, being her patrimonial portion. This the auditor finds; but at the same time he has found that he received it as a gift from his wife. The testimony relied on for this conclusion is that of Abraham Landis, who, after stating in chief the fact that he had paid Deborah Bergey $1500 "out of her father's and mother's estate" some seventeen or eighteen years ago, after her marriage with Jacob Bergey, on cross-examination testified as follows:—

"Deborah Bergey and her husband were together when I paid the money. Jacob picked up the money and counted it; and I think he did'nt put it down again. I know that Jacob Bergey, at about this time, had bought his father's farm, and *he* told me he would put the money in there. He said that they wanted this money; they had bought the farm." Charles Benner proved the payment to his sister, Mrs. Bergey, of $180 about the same time.

The testimony of Landis, together with the fact that no note or judgment was given to the wife to secure the money for eight or nine years, is the sole foundation on which the auditor rests his conclusion that the money was obtained as a gift, and that the judgment was a fraud against Bergey's creditors. Not a word was spoken by the wife when her husband took up the money to count it, and put it in his pocket. Nor do we ever hear of a word thereafter to the effect that the wife had made a gift of it. No inference of a gift from the transaction as detailed could, we think, arise. She was not bound to attempt a rescue of it from him, or proclaim that it was not a gift. She might rest on the idea that his receipt, in her presence, was with the intent to take care of it for her. In Johnston v. Johnston's Administrators, 7 Casey 450, this court said in a case of the nature of this, "as the law made it (the money) hers, it presumes it to have been received for her by her husband." That case contrasts the presumptions arising from the receipt of money by husbands, prior and subsequent to the Act of 11th of April 1848. In the first period, the presumption is that he has received it under and by virtue of his marital power as his own; in the second the presumption is the opposite that he received it for his wife, the Act of Assembly having declared it hers, and for her "sole and separate use." To the same effect are Grabill v. Moyer, 9 Wright 530, and Millinger v.

[Bergey's Appeal.]

Bowman, Id. 522, in both of which Johnston *v.* Johnston's Administrators is referred to as the rule under the act.

Applying these principles to the transaction disclosed by the proof, and uncontradicted, at the time the money was paid and taken possession of by Bergey, it seems to us that there was not a shadow of a reason for holding that there was a gift of it to him by his wife. Did anything subsequently transpire to disclose that this was the object of the transmission of the money, if such an expression be a proper one to characterize the unbidden seizure of it by the husband? We shall see.

If it was not a gift, the husband was a trustee for his wife, and whether he kept the money in his pocket or put it into real estate which he had purchased, honesty required that he should account to her for it. He could be compelled to do so in equity.

There is something like an argument by the auditor, that as the wife assented to the money being invested in the real estate purchased by her husband, she could not reclaim it, as it was appropriated at her request. That, however, would be a gift, in one sense at least; but it is claimed that it is not that, but an appropriation for her own use. The idea was doubtless suggested by what was said in Johnston *v.* Johnston's Administrator. It was there held that the wife, having expressly directed the appropriation of money received by the husband, belonging to her, to be expended in a particular way for the comfort of herself and family, she was so fully the owner and proprietor of it she was not allowed to reclaim it against his estate on the footing of a loan or debt. The proof is wanting here to bring the case within that rule; for the evidence is wholly wanting to show a direction for its investment. It does not even appear in the testimony that Mrs. Bergey was present when her husband said he would put her money into the house he had bought; or if present, that she assented to it. Certainly she is not to be bound without her assent, and that is not to be assumed to have been given without some proof of it. The case cited above held the wife precluded from reclaiming the money, only because of her assent inferred from her express direction to use it in a particular way. As this was not shown in this case, we presume that it did not exist. We take no account of what Charles Benner says on the subject. He gives no fact to substantiate what he says he knows of the matter, or how he knows what he asserts, or when or where he learned it. Besides, the auditor holds him an unreliable witness. We have no reason for esteeming him otherwise.

But the length of time which transpired between the receipt of the money and the date of the bond given by Bergey, in trust to secure his wife, is dwelt on by the auditor, as a circumstance negativing the idea of a loan, especially as there was no promise of repayment when he obtained it. If a stranger had possessed

[Bergey's Appeal.]

himself of her money as did her husband, it will hardly be contended that a recovery as for a loan might not be had against him without a promise to repay it; and it was no less hers under the act, because her husband took it. The lapse of time, some eight or nine years, between the date of its receipt and the bond given to secure it, did not raise any presumption against the character of the original transaction, either as a loan or as money received in trust. While under some circumstances it might raise a bar to its recovery by reason of statutory limitations on the remedy, the character of this transaction remained as at first. But Bergey was not bound to interpose the statute of limitations to bar the debt or to defeat the trust in favor of creditors, even if he might. Their claims were, at the best, no more meritorious than hers. It was no fraud on them to give a judgment to secure his wife, there being no question of his receipt of her money, even if there was a lapse of nine years during which she trusted, and it may be "waited and hoped" for justice from him. It would have been a fraud upon this most intimate and confidential of all relations, if he had not done so.

But the auditor discarded the bond because it was the declaration of the husband of his indebtedness to his wife. That objection would be good for a great deal, in a proper case. But not in a case where the debt, by the receipt of the money, is fixed, settled, undisputed, and so found by an auditor. It is admitted that the giving of the bond includes in it an admission of the character of the original transmission of the money. Let it be understood, that this would not be allowable to change the character of the original transmission. For instance, if there had been a gift of the money when it passed into the hands of the husband, and he had received it as such, a subsequent effort to change its nature into a loan, would not be allowed to succeed, certainly as against creditors. But when the note or bond is entirely consistent with the evidence of the terms of the actual receipt of it, the rule ought not to apply. In Johnston v. Johnston's Admr., we said that declarations made at the time of the receipt of the wife's money or *afterwards*, were evidence against the estate of the husband of the intent with which it had been received; and in both the cases cited, of Millenger v. Bowman, and Grabill v. Moyer, notes were given some time after the transmission of the money, and the wife's rights upon them were sustained. The mere lapse of time, while it properly superinduces scrutiny, does not change the principle on which the husband may be liable on account of the original transaction.

Perhaps it is hardly worth while to notice the fact, that the wife asserted her claim as a creditor of her husband by virtue of her judgment, when property of his on which it was a lien was sold in 1862 by the sheriff, and it was allowed by the court. This at

10 P. F. Smith—27

least showed the assertion of her rights when jeoparded, and that her claim now made on account of the money then received on her judgment, is neither stale nor justly suspicious.

With that money and the aid of a friend, between whom and her husband no collusion is shown or found, she became the owner of the property, the proceeds of which have given rise to this litigation. It was bought by and deeded to her. It was sold on a mortgage given by her with her husband for a loan to her. After the payment of that lien why shall she not be entitled to the overplus? There is much said by the auditor and somewhat by the court, rather in generalities than specific objections to her claim. But waiving this, we cannot agree that these conclusions are correct on any basis assumed, after a careful examination of all the facts in the case. We think the auditor, even if he might set aside the judgment for fraud, had no sufficient evidence in any of the considerations noticed, and certainly not in the fact that the judgment was for too large an amount by the sum of the interest included in it. That was an easy mistake to make—especially as it was held in Grabill *v.* Moyer, that the wife was entitled to recover interest when the husband had assumed to pay it. It was easy to fall into the error that interest followed the principal, as an incident in such a case, without an express assumption. This simply was, therefore, not a ground for setting aside the judgment, and we do not discover any other sufficient ground.

The auditor exhibits a very laborious examination of cases to support his theories, and to sustain his ultimate conclusion. It is likely they do sustain peculiar points of view of portions of the case, but it is a coincidence that a large majority of them concur in maintaining married women's rights under the Act of 1848, under almost any aspect of attack, instead of defeating them. That act is an enabling or enlarging act—and it is of the very nature of such acts that they are to be administered in the spirit of the rights enlarged by them. Such legislation implies an intention to reform or extend existing rights, and it cannot be that it is the duty of the courts to render them as unavailing as possible to the class intended to be benefited, by harsh and unpractical views and rules. Our line of decision under the statute has few deviations, in my judgment, from a due course. We hold the married woman to clear and satisfactory proof that property claimed by her is an acquisition by her own means, or the means of friends, independently of her husband. This being established, we have always given her the full benefit of it as her own separate estate, as the law declares it to be. In Tripner *v.* Abrahams, 11 Wright 221, we reversed one of our brethren for holding too stringent a view in the proof to establish the wife's rights of property—and asserted the rule that the proof by the wife of her means of acquisition, independent of her husband, must be " clear

[Bergey's Appeal.]

and satisfactory." This is a reasonable rule which courts and juries may easily perceive and apply. We mean not to relax that in the least degree.

In conclusion, we cannot concur with the learned judge below that Mrs. Bergey is only entitled to the difference between the amount of money directly put into the land by her,' and the lien created by her on it. We see no evidence or reason why the title, being in her by her own means and that of friends without collusion on their part with her husband and the use of his means, should not enure to her use. It was not intended for the creditors of her husband by these friends. That is the state of this case, so far as the Snyder and Boorse tracts are concerned.

As the record furnishes no evidence showing that Mrs. Bergey paid for the Price tract, she of course cannot receive the proceeds of it.

It appears that the Snyder & Boorse tract cost $2325, and the Price tract $788.12, and the fund in court apportioned between them would give the Snyder & Boorse tract $807.70, and the Price tract $549.43.

And now, February 5th 1869, the decree of distribution made in the Common Pleas is reversed, and it is ordered and decreed that the money in court be paid as follows :—

To Deborah Bergey     .     .     .     .     $807.70
To J. R. Hunsicker     .     .     .     .     337.42
To William P. Moyer     .     .     .     .     173.45
To Thomas M. Colder     .     .     .     .     38.56