Brickley and another vs. Walker.

as still existing is plain and can have no other construction. We can find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 32 N. W. Rep. 686.— REP.

BRICKLEY and another, Respondents, vs. WALKER, Appellant.

*March 22 — April 12, 1887.*

*(1, 2) Appeal to S. C.: Instructions to jury. (3, 13–15) Conversion: Chattel mortgages: Pleading. (4–11) Debtor and creditor: Fraudulent conveyances: Husband and wife: Evidence: Burden of proof. (12) New trial: Newly discovered evidence.*

| | |
|---|---|
| 68 | 563 |
| 74 | 586 |
| 74 | 589 |
| 68 | 563 |
| 75 | 630 |
| 68 | 563 |
| 82 | 71 |
| 68 | 563 |
| 83 | 582 |
| 68 | 563 |
| 89 | 544 |
| 68 | 563 |
| 90 | 36 |
| 68 | 563 |
| 53 LRA | 539 |
| 56 LRA | 829n |

1. The mere refusal of the court to state certain facts to the jury, though they were undisputed, is not ground for a reversal of the judgment.
2. The refusal to give an instruction asked is not ground for a reversal of the judgment, if it was substantially given in the general charge.
3. The attachment by an officer of chattels not belonging to the attachment debtor, and his marking them, and thus assuming and retaining control over them, and subsequently asserting and justifying his seizure and possession under the attachment, is a conversion thereof.
4. Deeds and contracts for land, running to a married woman, are *prima facie* evidence of her title to the land and to the timber cut therefrom, as against her husband's creditors.
5. Policies of insurance upon lumber in the names of a wife and daughter are admissible in evidence, in an action by them for the conversion of such lumber by attaching creditors of the husband and father, as tending to show that they treated the property as their own.
6. Evidence to show the sources from which the wife and daughter acquired money, with which to buy land or timber from which such lumber was made, is admissible in such action.

7. Evidence is not admissible in such action to show that accounts re-lating to contracts with the plaintiffs were kept by the other con-tracting parties in the name of the husband and father, unless the plaintiffs' knowledge of or acquiescence in their being so kept is also shown.

8. Where a wife claims title to property seized on execution against her husband, even though by conveyance from him to her, the burden of proof is upon her merely to show that she purchased for a valuable and adequate consideration paid out of her separate es-tate, or by some other person for her; and the burden of proving the conveyance to have been in fraud of the husband's creditors is upon such creditors.

9. The fact that a husband is insolvent does not preclude him from pay-ing to his wife a valid debt, due from him to her for money loaned, thus preferring her to other creditors.

10. A wife may lawfully contract with a firm of which her husband is a member, to run a boarding house for them for a stipulated share of the profits, and the share so earned by her will be her separate estate.

11. A wife may lawfully purchase land and cut and dispose of the tim-ber thereon in her own name, using her husband as her agent, and the proceeds will not be subject to the claims of her husband's creditors, provided she so purchases with money belonging to her-self and not belonging to or derived from her husband.

12. Newly discovered evidence upon points not involved in the issues of the case, nor capable of being determined on the new trial, is not sufficient ground for granting a new trial, though it may entitle the party to some other relief.

13. A mortgagor of chattels may maintain an action for the conversion thereof against any one not claiming as or under the mortgagee.

14. A complaint which is not demurred to, except by objection to evi-dence at the trial, must be liberally construed.

15. A complaint which alleges the plaintiff's ownership of chattels, their value, the unlawful conversion and disposition of the same by de-fendant to his own use, to plaintiff's damage, will be held good after a trial in which the title was put in issue and fully tried and a verdict rendered for plaintiff, notwithstanding it fails to allege the plaintiff's possession or immediate right of possession.

APPEAL from the Circuit Court for *Portage* County.

The case is thus stated by Mr. Justice CASSODAY:

Action in trover. May 14, 1885, the defendant, as sheriff, seized the lumber in question, a part being at Runkel's mill,

and the rest at Brickley's mill, so called, all in Eau Plaine, Portage county, and then appraised at $5,545.38, as the property of Benjamin Brickley, on an attachment in a suit against him and in favor of one Andrew Wilson upon a note of $1,210 and interest at ten per cent. from March 10, 1882. September 12, 1885, the plaintiffs, claiming to be the owners of said property at the time of said seizure, commenced this action against the sheriff for damages by reason of the alleged unlawful seizure and conversion of said property. The defendant, answering, justified under such attachment. At the close of the trial, and on March 4, 1886, the jury returned a verdict in favor of the plaintiffs for the sum of $4,140.23 damages. From the judgment entered thereon the defendant appeals.

For the appellant there were briefs by *Houghton & Haddock* and *Chas. W. Felker*, and the cause was argued orally by *Mr. Houghton* and *Mr. Felker*. They contended, among other things, that plaintiffs could not maintain this action because they had neither alleged nor proved possession or the right to immediate possession. 1 Chitty Pl. (16 Am. ed.), 181; 2 id. 619; *Winship v. Neale*, 10 Gray, 382; *Clark v. Draper*, 19 N. H. 419; *Ames v. Palmer*, 42 Me. 197; *Caldwell v. Cowan*, 9 Yerg. 262; *Ayres v. French*, 41 Conn. 142–150; *Bloram v. Sanders*, 4 Barn. & C. 941; *Gordon v. Harper*, 7 Term, 9; *Holmes v. Bell*, 3 Cush. 322; *Pain v. Whittaker*, 21 Eng. C. L. 390. Nor could they do so, being mortgagors of the property. *Appleton Iron Co. v. Brit. Am. Ass. Co.* 46 Wis. 23; *Cline v. Libby*, id. 123; *Woodruff v. Halsey*, 8 Pick. 333; *Coles v. Clark*, 3 Cush. 399; Jones on Chat. Mort. secs. 426, 440; *Goodrich v. Willard*, 2 Gray, 203; *Leach v. Kimball*, 34 N. H. 568. The defendant could show title in the mortgagees. *Dawes v. Peck*, 8 Term, 330; *Schermerhorn v. Van Valkenburgh*, 11 Johns. 529; *Kennedy v. Strong*, 14 id. 128; *Rotan v. Fletcher*, 15 id. 207; *Smoot v. Cook*, 3 W. Va. 172; *Glenn v. Garrison*, 17 N. J. Law, 1;

*Rose v. Coble,* Phil. (N. C.) Law, 517; *Clapp v. Glidden,* 39 Me. 448, 451; *Aikin v. Buck,* 1 Wend. 466; *Ribble v. Lawrence,* 51 Mich. 569. It was error to exclude evidence and refuse instructions as to fraud in the transactions between husband and wife. *Clark v. Vorce,* 19 Wend. 232; *Ellis v. Short,* 21 Pick. 142; *F. & M. Bank v. Whinfield,* 24 Wend. 419; *State Bank v. Dutton,* 11 Wis. 371; *Richards v. Noyes,* 44 id. 609; Bump on Fraud. Conv. 579, 585, 588, 601; *Kalk v. Fielding,* 50 Wis. 339; *McKee v. Gilchrist,* 3 Watts, 230; *Benham v. Cary,* 11 Wend. 83; *Wausau Boom Co. v. Plumer,* 35 Wis. 274; *Roebke v. Andrews,* 26 id. 311.

For the respondents there was a brief by *Raymond & Haseltine,* and oral argument by *Mr. Haseltine.* The allegation of ownership was in effect an allegation of right of possession. *Columbian Ins. Co. v. Lawrence,* 2 Pet. 25; *Davis v. Cincinnati,* 36 Ohio St. 24; *Googins v. Gillmore,* 47 Me. 9; *Welch v. Whittemore,* 25 id. 89; *Ayer v. Bartlett,* 9 Pick. 156; *Forbes v. Parker,* 16 id. 462; *Farrant v. Thompson,* 5 Barn. & Ald. 826; *Gordon v. Harper,* 7 Term, 12; *Howard v. Farr,* 18 N. H. 457. The objection, if any, was waived by its not being specifically taken to evidence showing right of possession. *Bowman v. Van Kuren,* 29 Wis. 209. As to the right of a mortgagor having a right of possession to maintain the action, see *Cline v. Libby,* 46 Wis. 123; *Letcher v. Norton,* 5 Ill. 578; *Sherman v. Clark,* 24 Minn. 37; *Hall v. Sampson,* 35 N. Y. 274.

CASSODAY, J. The merits of the controversy were involved in the question whether the lumber attached was, at the time, the property of the plaintiffs, or in fact the property of Benjamin Brickley. The verdict rendered necessarily found it to be the property of the plaintiffs. Such verdict is challenged as not being supported by the evidence. It must be confessed that there are suspicious circumstances connected with the alleged acquisition of title by the plaint-

iffs. The plaintiff *Augusta Brickley* is the wife of Benjamin Brickley, and the other plaintiff, *Sarah C. Brickley*, is their daughter. In 1875, Benjamin Brickley was in good circumstances. His mill interest at Brickley was worth $3,000, and, besides, he owned five or six hundred acres of good pine lands. In 1879 he was in partnership with one Otto, doing business at the Brickley mill. In that year, Benjamin being deeply insolvent, Otto sold out his interest in the mill and business to Segelke, Kohlhous & Co., then doing business at La Crosse, and who seem to have acquired title to the whole property and thereafter conducted the whole business at Brickley mill. About the same time Benjamin became a silent partner in that firm, and continued such until his interest was sold to Thomas Petty in 1882, from which time the proprietors of the mill and business at Brickley were known as Segelke, Petty & Co. On the part of the plaintiffs there is evidence tending-to prove, in effect, that May 12, 1875, *Augusta* obtained $300 from her father's estate, and then loaned the same to her husband; that in 1874, and when *Sarah* was sixteen years of age, she went to teaching school in different parts of the country, and in doing so accumulated a little property; that October 27, 1877, a contract was made by her, or in her name, with Hungerfords, for forty or fifty acres of land, and for which she paid some $300; that during the years 1877–79, she caused logs to be taken from that land and sawed by Otto & Brickley at the Brickley mill, and sold the lumber at a profit; that during the years 1879–80 *Augusta* boarded the hired men of Segelke, Kohlhous & Co. at Brickley, under a contract with them whereby she was to have one half of the net profits, and that she received from them under that contract, as such profits, $768.45; that about the same time she received from her husband the $300 loaned him in 1875, and interest, amounting to $465; that about the same time *Augusta* let *Sarah* have $1,200; that about the same time *Sarah* and

one George Attenburg bought of the Ringles the pine tim-
ber on some 440 acres of land,— she paying for her share
some $1,700; that from her share of the pine on the Ringle
lands she sold large quantities of logs, and had large quan-
tities manufactured into lumber by Segelke, Kohlhous &
Co., receiving therefrom large profits; that November 25,
1881, *Augusta* bought 160 acres of pine lands from Gerhart,
paying therefor $300, which was received by her from *Sarah;*
that October 11, 1882, *Augusta* bought of Hanchetts 160
acres of pine lands, paying therefor $250; that from the
lands so bought by *Augusta* large quantities of logs were
taken by her and manufactured into lumber and sold, and
from which she realized large profits; that October 29, 1883,
*Sarah* contracted with Powell for forty acres of pine land,
and from which logs were taken by her and manufactured
and sold; that from July 25, 1883, to October 25, 1883,
*Augusta* had insurance upon lumber piled in the yard, and
coming from such lands, to the amount of $3,000; that from
May 13, 1884, to August 13, 1884, *Augusta* had insurance
upon lumber piled in the yard, and coming from such lands,
to the amount of $4,200; that *Augusta* and *Sarah* never had
any settlement; that the lumber attached in this action
came from their respective lands, or was purchased by them
or in their name; that in making such purchases, getting in
such logs, manufacturing such lumber, and selling the same,
Benjamin generally acted as the agent of his wife and
daughter respectively, and received from them compensa-
tion for such service.    We cannot go into the details of the
evidence, nor any seeming conflict or inconsistencies. While
there are some suspicious circumstances connected with the
acquisition of title, yet we do not feel authorized to hold, as
a matter of law, that such titles were so acquired with the
intention of hindering, delaying, or defrauding the creditors
of Benjamin Brickley.    On the contrary, we must hold that
the evidence is sufficient upon the merits to sustain the ver-

dict. This brings us to the consideration of the numerous errors assigned.

1. Was the complaint sufficient? Where there is no demurrer to the complaint, and its sufficiency is first raised by objection to evidence at the trial, it must be liberally construed. So construed, we must hold this complaint sufficient. It alleges the ownership of the property by the plaintiffs, and its value, the unlawful conversion and disposition of the same by the defendant to his own use and to the damage of the plaintiffs. The title was put in issue and fully tried upon the merits. We cannot disturb the verdict merely by reason of the failure to allege that the plaintiffs were at the time in possession or entitled to the immediate right to the possession. An allegation of ownership, under such circumstances and after such verdict, must be deemed to include the immediate right to the possession.

2. The insurance policies on lumber in the yard in 1883 and 1884 seem to have been properly admitted in evidence. Their materiality is not very apparent, it is true, but under the circumstances, and in view of the fact that the husband and father was ostensibly managing the business, we think it was not objectionable to show just how it was treated by them, respectively, during the time. At least it presents no material error.

3. For the same reasons it was competent to show the sources from which the daughter obtained the moneys with which to buy the lands or timber from which some of the lumber in question came. The same was true with respect to the wife.

4. The court properly excluded the testimony of Segelke, one of the witnesses for the plaintiffs, on cross-examination, as to the contents of the books of the firm at La Crosse in relation to the boarding-house account, and as to whether the boarding-house profits were paid or charged in those books to Benjamin, without showing the knowledge or acquies-

cence of *Augusta* in the keeping of such accounts, or in any way connecting her with them. If her contract with the firm was valid, then no one could destroy its effect by admissions made without her knowledge or consent.

5. The same is true in respect to the exclusion of the entries in the books of Anthony Ariens, who operated the Runkel mill, respecting a saw-bill against Benjamin and his wife. The same is true respecting the account and books of Segelke, Petty & Co., of a saw-bill of part of the lumber in controversy kept by that firm in the name of Benjamin. There was no evidence tending to show the knowledge of or acquiescence in the making of such entries or accounts by either of the plaintiffs, or in any way connecting either of the plaintiffs with the making of either of such entries or accounts, except that the wife did learn that the saw-bill was run in her name for one year and after that in the name of her husband; and that, when the daughter learned that the saw-bill had been kept in the name of her father by Segelke, Petty & Co., she insisted upon having the books altered so that the account should be with her. We do not understand that the defendant was precluded from showing anything he could by legitimate evidence tending to prove an admission on the part of either of the plaintiffs to the effect that Benjamin was the real owner of any of the lumber attached.

6. The mere fact that Benjamin was insolvent at the time did not preclude him from exercising his legal right of paying his wife, in preference to his other creditors, the money which he or his firm had borrowed of her in 1875. There was no law against such preference. If the money was borrowed and repaid in good faith, then there would seem to be no valid reason for depriving her of the benefit of it; and the instructions requested, inconsistent therewith, were properly refused. The jury were, in effect,

charged to scrutinize closely and carefully all transactions and dealings between the husband and wife. They found, in effect, that it was the repayment of a *bona fide* debt.

7. Exception is taken because the court charged the jury to the effect that the wife might as legally contract with the firm of Segelke, Kohlhous & Co. as with a stranger for the running of a boarding-house for such firm, notwithstanding her husband was at the time a member of the firm, and also for refusing to instruct to the contrary. That the wife had no power to so contract, the learned counsel for the defendant cite and rely upon *Lord v. Parker*, 3 Allen, 127, and *Edwards v. Stevens*, 3 Allen, 315. Other cases might be cited to the same effect, from the same state and others. But the statutes under which such decisions were made, were in some respects different from ours. The present statutes of Massachusetts seem to prohibit contracts between husband and wife. Secs. 2, 3, 7, 11, ch. 147, Pub. St. 1882. But in this state it was settled, even prior to the enactment of ch. 155, Laws of 1872 (secs. 2343, 2345, R. S.), that a married woman, having a separate estate, might deal with her husband respecting the same, loan him money, take a transfer of property from him in payment thereof, and buy property of him, provided the transaction was fair and honest and not in fraud of creditors. *Beard v. Dedolph*, 29 Wis. 136; *Hoxie v. Price*, 31 Wis. 82; *Breslauer v. Geilfuss*, 65 Wis. 387. The powers thus possessed by married women are greatly enlarged by the enactment mentioned. *Krouskop v. Shontz*, 51 Wis. 215, 216; *Houghton v. Milburn*, 54 Wis. 554; *Carney v. Gleissner*, 62 Wis. 497. But the objection is more specific, and goes to the nature of the contract. The contract for boarding the men did not have direct reference to the wife's separate estate. But, if she had a separate estate at the time, she could, under the law as settled in this state, contract even with her husband upon the faith and credit of that estate. Besides, the statute

made "the *individual earnings*" of the wife, "except those accruing from labor performed for her husband, or in his employ, or payable by him, . . . her separate property," and declared the same should "not be subject to her husband's control, or liable for his debts." Sec. 2343, R. S.. In addition, it gave her "all the remedies of an unmarried woman in regard to her separate property or business, and to recover the earnings secured to her" thereby. Sec. 2345, R. S. As indicated, ch. 155, Laws of 1872 (secs. 2343, 2345, R. S.), was enacted for the very purpose of enabling every married woman, though having no separate estate, to acquire one by her individual earnings, except such earnings as might accrue from labor performed by her for her husband, or in his employ, or payable by him. These exceptions are not very explicit; but when we consider the object of the enactment and the law as previously settled, we are constrained to hold that such exceptions were merely to protect the husband from liability to his wife for her ordinary services for him or the family in the household, or where she is directly employed by the husband in carrying on some business in which he is engaged, or where the nature or circumstances of her employment are such that her earnings or services are to be paid for directly by her husband, if at all. So construed, the case at bar, upon the facts as found by the jury, does not come within any of the exceptions stated. She was to have one half of the net profits, and the firm the other half. She only got such half of the profits. Had there been no such profits, she would under the contract have got nothing. As fast as such profits accrued, they became her separate estate. The firm incurred no liability to her for such services or earnings, although in case it received any part of her share of such profits, that is, of her separate estate, it might have become liable to her therefor. The firm was entitled to the repayment of all advances made. It was only such

profits that were to be divided. The wife made the venture, depending entirely upon one half of such prospective profits for her remuneration. In the two years she succeeded in obtaining the amount stated. It might have been otherwise and she obtained nothing. We have said that the object of the enactment was merely for the purpose stated. It should be added that there was probably the additional object of preventing its abuse by committing a fraud upon the creditors of the husband by pretended payments of pretended contracts for services of the wife. But the case here made upon the facts found does not come within the prohibition or any of the exceptions. Such was manifestly the view of the statute taken by the learned trial judge. The *bona fides* of such contract and business were submitted to the jury, and by them found in favor of the plaintiffs.

8. Exceptions are taken because the court refused to give certain instructions requested, and charged the jury to the contrary, and to the effect that the logs out of which the lumber in controversy was manufactured were from lands of which the plaintiffs, or one of them, had the legal title, and that the legal title of such logs and lumber would follow and be in the legal owners of the land; that a married woman might lawfully purchase property, real or personal, and carry on business in her own name, and have, own, and enjoy the fruits thereof, the same as though she were unmarried, without interference from her husband or his creditors, but only upon the condition that the money or capital so employed be her own, and not her husband's, and obtained from sources other than and independent of her husband; that she could not take her husband's money and purchase property in her own name to screen it from the lawful demands of her husband's creditors, nor carry on his business in her name in order to prevent such creditors from reaching its products; that property thus purchased.

and business thus prosecuted in the name of the wife alone or with another, with the means of the husband and really for him, would be subject to the demands of his creditors as fully as if it were all done in his name.  These instructions, taken as a whole, do not seem to be objectionable. The several deeds and contracts of lands to the wife and daughter were each and all from persons other than the husband and father, and hence were *prima facie* evidence of title in the plaintiffs, respectively.  *Arndt v. Harshaw*, 53 Wis. 269.  The jury were so charged in substance, with a qualification to this effect:  But if it appears that such lands were purchased with the money or means of the husband, or with money or means derived directly or indirectly from the husband, and are in the name of the wife or any other person, neither she nor such other person can cover it up or keep it from the creditors of the husband, thereby to defraud, hinder, or delay such creditors in the collection of their just demands against the husband; that as to such creditors the property is the husband's and may be seized upon lawful process in their behalf, and held and sold in satisfaction of their demands against the husband, the same in all respects as if the title stood in the husband's name. Such portions of the charge were certainly favorable to the defendant.

9. Exception is taken because the court charged the jury, in effect, that the burden of proving the alleged fraud was upon the defendant.   Even where the wife claims title to property seized on execution against her husband by virtue of a conveyance *from him to her*, the burden of proof is upon her only to show that she purchased the property for a valuable and adequate consideration paid out of her separate estate, or by some other person for her.   That being shown, the burden of proving such conveyance to have been made in fraud of the husband's creditors is upon the party attacking the same.  *Evans v. Rugee*, 57 Wis. 623.   This is con-

ceded. But it is claimed that the charge in this respect is too sweeping, as the burden was upon the plaintiffs to show that the funds with which the lands were purchased were theirs, and not Benjamin's. In view of the whole context of the charge in this respect, and portions of the charge already mentioned, we think the court did so charge in effect. In fact, under a portion of the charge mentioned, the jury were at liberty to find the legal title to the lumber in the plaintiffs or one of them, *only on condition* of their first finding that the money, means, or capital with which the lands or timber were purchased belonged to them or one of them, and not to the husband and father.

10. Exception is taken because the court, in effect, charged the jury that if the property attached was the plaintiffs' then the action of the defendant in taking, making, and thus assuming and retaining control over it, was a sufficient conversion to maintain this action. The fact that the answer justified the seizure, possession, and holding of the property by the defendant under the attachment against the husband and father, would seem to preclude the defendant from now disclaiming such seizure, possession, and holding.

11. The court was requested to instruct the jury, in effect, that if they believed "from the whole testimony that the money was, *in whole or in part*, derived from her husband or from the proceeds of her husband's estate, and that such title was so taken in her name to aid or assist in covering up her husband's property and to hinder, delay, or defraud her husband's creditors, then the plaintiffs" could not recover, and their verdict should be for the defendant. This was substantially given, whether it had respect to the whole or only a part.

12. The mere fact that *Augusta* and her husband had, March 21, 1885, given a chattel mortgage upon the lumber, or some of it, to Finch, to indemnify him and Cate against

loss by reason of their signing an undertaking as sureties given on appeal to this court in the action of *Arians v. Brickley*, 65 Wis. 26, did not prevent the maintenance of this action against one not claiming as or under such mortgagee, but under an attachment against the property of Benjamin Brickley, and the request to charge to the contrary was properly refused. *Augusta* disclaimed any knowledge of the mortgage having been signed by her husband. By the terms of the mortgage, there was an implied right in the mortgagors to retain possession, even as against the mortgagee, until the condition should be broken. If *Augusta*, or she and her daughter, in fact owned the lumber, then they certainly had the legal right to the possession of it, notwithstanding the mortgage, as against one not claiming under such mortgagee, but under such attachment.

13. The mere refusal to state certain facts to the jury, though undisputed, is not ground for reversal.

14. Error is assigned because the court refused to set aside the verdict and grant a new trial for newly discovered evidence. This evidence is said to be the existence of a common-law lien in favor of Segelke, Petty & Co. for sawing a portion of the lumber attached. But that question was not involved in the issues in this case, as will appear from their nature as already stated. Not being in issue, the existence of such common-law lien could not have been authoritatively determined upon a retrial of such issues. *Wilde v. Paschen*, 67 Wis. 90; *Carney v. Gleissner*, 62 Wis. 493. Undoubtedly, such third persons might have been made parties, and the question as to the existence of such lien might then have been determined. *Ibid.;* sec. 2610, R. S.; ch. 41, Laws of 1883. Had they been made parties, a new and different issue would have been presented for trial. But the trial of such new issue would not have necessitated a retrial of the old issues, although its determination might have diminished the amount of the plaintiffs'

recovery. It may be that the facts stated in the motion papers would have authorized the court to stay proceedings upon the verdict until such third parties could have been brought in, and the existence of such lien and the amount thereof authoritatively determined. But the court was not asked to do that, and the facts stated did not warrant the court in doing what was asked. Its refusal, therefore, was not error. It may be that the defendant may still be protected by an action in equity against the plaintiffs and such lien claimants. But that question is not properly before us, and of course cannot be here determined.

We have thus disposed of all the questions presented by the record. Although numerous errors were assigned and vigorously presented, yet a careful examination of each by all the four members of the court participating in the decision fails to disclose any substantial error on the part of the trial court.

*By the Court.*— The judgment of the circuit court is affirmed.

See notes to this case in 32 N. W. Rep. 774, 780.— REP.