### In re NEIMAN.

#### District Court, E. D. Wisconsin. May 31, 1901.)

BANKRUPTCY—PROVABLE CLAIMS—MONEY RECEIVED BY BANKRUPT FROM HIS WIFE.

Under the statutes of Wisconsin, which remove the common-law disabilities of married women, and under which they have full right to contract with respect to their separate property with their husbands as well as others, where the wife of a bankrupt, on her marriage, a few months prior to his bankruptcy, received a marriage portion from her father, which she placed in the hands of her husband in good faith, and which he used in his business, no presumption of a gift arises from such transaction, but he is presumed to have received and held the money in trust for his wife, there having been no express agreement in relation thereto; and in the absence of any fraud on her part, or knowledge of any fraud committed by him, she is entitled to prove her claim therefor against his estate.

In Bankruptcy. On review of an order by the referee disallowing the claim of Minnie Neiman, wife of the bankrupt, for $4,000.

Churchill & Donovan, for claimant.
Price, Burke & Cowen, for trustee.

SEAMAN, District Judge. The claimant, Minnie Neiman, is the wife of the bankrupt, and her claim against the estate is for $4,000,

109 F.—8

which was given to her by her father as a marriage portion, and paid over to her husband, and by him used in his business. The proof is clear and undisputed that this amount was set apart by her father to be advanced to her upon her marriage; that her father, at her request, made the payment to the bankrupt as such portion, but deducted from the check, at the suggestion of the latter, $554.25, to cover the amount owing for recent purchases of goods from the father for the bankrupt's business, the daughter having no part either in the purchase or deduction; that no note was taken for this payment, and no formal acknowledgment was given (aside from the father's receipt for his account); and the testimony is meager as to the oral understanding. As stated by the claimant, she said to Mr. Neiman:

"I would get some money from my father, and would give him some money at my marriage. So I told him when we did get married he could have the use of it,—of course, with the intention it was my own; some day he would give it back;" and that "he spoke at the time he would get some bank stock for it, perhaps a house, later."

The marriage occurred June 6, 1900, but the check was given June 4th, though dated June 6th; and the parties lived together less than five months, when some unexplained family disagreement arose, and the bankrupt abandoned his wife, house, and business, resulting in the bankruptcy proceeding. The money thus obtained from the wife was applied by the bankrupt in his business, except a small sum used in purchasing household furniture, and it does not appear that the wife made inquiry as to its disposition. If the conduct of the bankrupt subsequent to the marriage was fraudulent as well as foolish, there is no testimony which indicates either actual fraud on the part of the wife, or her knowledge of or complicity in any acts of her husband tending to defraud his creditors. Their acquaintance prior to the marriage extended over a few weeks only,—one residing in Milwaukee, and the other in Kenosha; and, so far as appears, the husband continued his clothing business at Kenosha after the marriage in the same manner it was carried on before. Whether the husband was deeply involved in debt at the time of the marriage, and used the money in liquidation of such indebtedness, or absconded with considerable means in his hands, are inquiries not material here, in the absence of circumstances from which knowledge and complicity on the part of the wife may be inferred. The bona fides of the claim, therefore, are well established, unless the payment was intended as an absolute gift to the husband; and the order for its disallowance rests alone upon the contention that the marriage portion was surrendered as a gift, either intentionally or in legal effect, and that no relation of trust or of debtor and creditor arose.

The question thus presented is not free from difficulty, even under the modern statutory provisions respecting the property rights of married women, by reason of the diversity of the authorities as to the presumption arising from such dealings between husband and wife. The statutes of Wisconsin, in accord with the policy of the states generally, remove the common-law disabilities of mar-

ried women to enter into contracts in respect of their separate property; and their right to thus deal with the husband as well is clearly recognized, subject only to the rule that such transactions must be "closely examined and scrutinized to see that they are fair and honest, and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors," or not used as a means to deceive and defraud creditors. Hoxie v. Price, 31 Wis. 86; Horton v. Dewey, 53 Wis. 414, 10 N. W. 599; Semmens v. Walters, 55 Wis. 684, 13 N. W. 889; Evans v. Rugee, 57 Wis. 625, 16 N. W. 49; Brickley v. Walker, 68 Wis. 563, 32 N. W. 773. This precaution in examining the case is imposed, as remarked in Hoxie v. Price, supra, "on account of the great facilities which the marriage relation affords for the commission of fraud"; but, aside from inquiry in that view, no decision under the present statute appears to raise any presumption of gift out of a delivery of separate property to the husband, or to change the general rule applicable to parties in confidential relation, when the bona fides of the transaction are clear, and the appropriation by the husband is not acquiesced in for a long period. Lyon v. Railway Co., 42 Wis. 548, 553. In other words, just effect is thus given to the purpose of the enlightened legislation' which grants property rights and legal individuality to married women, and at the same time a guard is established against abuses which are liable to arise in transactions between husband and wife. See, for the general rule, 2 Beach, Mod. Cont. §§ 1266, 1267, 1269, 1270; 14 Am. & Eng. Enc. Law (2d Ed.) 1034, tit. "Gifts"; and cases cited in each. In this inquiry the testimony of the bankrupt in favor of the claim is left out of consideration, and the statement, as well, by the claimant of her intention; and the effect, moreover, of the receipt of the fund by the husband before the actual marriage, and of the alleged remark by the husband as to its investment, is not considered. So treated, the premises are clearly established,—that the money was the separate property of the wife, that it was placed in the hands of the husband in good faith, and that the statute confers the right to deliver the fund to the husband, either as a loan or trust or as a gift, unless fraud intervenes. The question then arises (1) whether a gift will be implied from the circumstance alone of such delivery to and use by the husband; or (2) whether the presumption exists that he received the money for her use, no express terms to that effect appearing. The doctrine of the first-mentioned inference is thus stated in Jacobs v. Hesler, 113 Mass. 157, 160:

"When a wife with her own hand pays money of her separate property to her husband, there is no presumption that he receives it in trust for her, but the burden is on her to prove the fact. In the absence of such proof, the money must be deemed to have been given to him with the intention that it should be applied to the use or benefit of either or both of them at his discretion."

But this view is predicated, as there remarked, upon the disability of the parties to make contracts with each other, although it is conceded that the husband might become a trustee for the wife. And in West Virginia it is held that a bona fide loan by the wife

to the husband will be recognized in equity, but that there must be an "express promise of repayment made at the time of the loan"; that no implied promise arises in such case, and a gift is presumed. 2 Beach, Mod. Cont. § 1270, supra, and cases noted. Like requirement of an express promise is ruled in Kuhn v. Stansfield, 28 Md. 210, 92 Am. Dec. 681, and in other cases predicated upon like construction of statutory provisions for married women. I am of opinion, however, that the doctrine of this line of decisions is not applicable under the Wisconsin statute, as construed by the supreme court of the state in the later rulings, exemplified in the above citations; and it is plain that the doctrine of community of property which prevails in several states, through adoption from the civil law, is not applicable. As remarked by Mr. Justice Field in Stickney v. Stickney, 131 U. S. 227, 240, 9 Sup. Ct. 677, 33 L. Ed. 136, the rule upheld in the above-mentioned authorities is "not in accord with the spirit and purpose of the married woman's act,"— having reference there to the statute in the District of Columbia, which is analogous to that of Wisconsin,—and the true rule, which is equally applicable here, is thus stated:

"Whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him." Page 238, 131 U. S., page 680, 9 Sup. Ct., and page 143, 33 L. Ed.

The authorities there cited clearly support this rule, and it seems to my mind the logical and necessary sequence of the freedom granted by the statute to the wife to enter into contracts respecting her separate property. For other authorities so holding under analogous statutes, the following are deemed sufficient citations: Armacost v. Lindley, 116 Ind. 295, 19 N. E. 138; Parrett v. Palmer, 8 Ind. App. 356, 35 N. E. 713; McNally v. Weld, 30 Minn. 209, 14 N. W. 895; Chadbourne v. Williams, 45 Minn. 294, 47 N. W. 812; Bergey's Appeal, 60 Pa. 408, 100 Am. Dec. 578; Jones v. Davenport, 44 N. J. Eq. 33, 13 Atl. 652; Boyd v. De la Montagnie, 73 N. Y. 498, 29 Am. Rep. 197. See, also, Garner v. Bank, 151 U. S. 420, 432, 14 Sup. Ct. 390, 38 L. Ed. 218; Williamson v. Johnson, 62 Vt. 378, 20 Atl. 279, 9 L. R. A. 277, 22 Am. St. Rep. 117; 2 Lewin, Trusts, 778; Crawley, Husb. & W. 268; 2 Beach, Mod. Cont. §§ 1266, 1269; 14 Am. & Eng. Enc. Law, supra.

In the light of the rule thus approved, I find in the circumstances of the case no ground for disallowing the claim in controversy. With the bona fides of the original transaction unimpeached, as before recited, the period of less than five months immediately following the marriage during which the money was dissipated or misappropriated is not sufficient to displace the claim of the wife in favor of other creditors, in the absence of deception on the part of the wife, or conduct inconsistent with such claim. The order of the referee disallowing such claim is reversed, with directions to enter an order allowing the same, in conformity with this opinion, which will be certified accordingly.