BARNES *et al. v.* CARTER *et al.*

1. The provisions of the Political Code, §908, which require that when property which has not been returned for taxation is sold, there shall be an offer to rent or hire the property before the same is offered for sale, do not apply to sales of wild lands.

2. Quære : Since the adoption of the Code of 1895, does not the duty of issuing executions against wild lands which have not been returned for taxation devolve upon the "receiver of tax returns," instead of the "tax-collector"?

Submitted January 7, — Decided March 11, 1902.

Petition for injunction. Before Judge Hansell. Echols superior court. December 5, 1901.

*E. K. Wilcox,* for plaintiffs. *R. G. Tison,* for defendants.

COBB, J. This was an application for an injunction to restrain the defendants from cutting timber from land which the plaintiffs claimed to own. The plaintiffs claimed to derive title through a tax deed founded upon an execution for State and county taxes, and the judge held that the deed was void and refused the injunction. The only question to be determined in this case is whether this ruling of the judge was erroneous. The lots in controversy were wild lands, and on May 1, 1898, the tax-collector had issued executions for taxes against the "lots as wild and unreturned lands." The lots were sold by the sheriff on August 2, 1898, after levy and due advertisement, and deeds were delivered to the purchaser, which were "regular in every respect except they failed to recite that the sheriff," before offering the lands for sale, " offered to rent or hire" the same for the purpose of raising the requisite amount to pay the taxes. There was read at the hearing an affidavit of the sheriff which stated that " no offer was made by him before the sale to lease, rent, or hire said lands in order to raise the taxes due thereon." The code declares that, " When property is assessed for taxes which has not been returned by any one, as soon as assessed the tax-collector shall at once issue an execution against

it for the amount due and costs, and the sheriff shall advertise it for sale in some public gazette ninety days before the day of sale, and if by said day the taxes are not paid, it shall be sold: *provided* renting or hiring will not bring the requisite amount." (Political Code, § 908.) This provision appears for the first time in our law in the Code of 1863 (§ 819), and has been brought down through all the codes to the Code of 1895, in the exact language in which it appeared in the first code. Under the provisions of the Code of 1863, there was only one plan provided for the collection of State and county taxes, as to return of property by the taxpayer, assessment of property in the event the taxpayer failed to return the same, and sales for taxes; and this plan was therefore applicable to all classes of property, whether realty or personalty, and to all lands, whether wild or improved. Consequently the provision in the section of the Code of 1863 which required that the sheriff, before selling unreturned property for State and county taxes, should offer the same for hire or rent before offering it for sale, would seem to apply as well to wild lands as it did to improved lands and other property. Subsequently to the Code of 1863, the General Assembly from time to time made changes in the plan for the collection of taxes in different particulars, so far as wild lands were concerned. In 1881 an act was passed (Acts 1880 – 81, p. 45, Political Code, § 821), which declares: "Any wild lands not given in for taxes in the county in which they may be shall be subject to double tax as other property, and it shall be the duty of the receiver of tax returns, when taxes are not paid in the time provided by law, to issue executions against said wild land, and after advertisement, as now prescribed by law, to sell said lands for payment of taxes." The act from which the above quotation is made does not provide that wild lands which have not been returned for taxation shall be sold in any particular way. It simply declares that such lands shall be *sold* for the payment of taxes. The act is clear on the point that there is to be a sale, and it does not provide for the collection of taxes in any other way than by a sale. As to the manner of sale, it is to be presumed that the General Assembly intended that the sale should be had in the manner provided by law for the sale of other unreturned property. The sale must therefore be had in the manner pointed out in Political Code, § 908, that is, by the sheriff after proper levy and ninety days advertisement.

The section last cited is, however, to be looked to for no other purpose than to ascertain the manner of sale; for the act of 1881 in effect declares that taxes on wild lands shall be collected by sale of such lands and only by a sale.   The provision in section 908, that unreturned property shall not be sold when the requisite amount to pay the taxes can be raised by renting or hiring, does not apply in cases of sales of wild lands, for the simple reason that it is manifest from the terms of the act of 1881 that the General Assembly did not intend that there should be any effort to rent such lands before selling the same, the act in terms providing for a sale only.   Even if the provision in reference to offering unreturned property for rent or hire before offering the same for sale was ever applicable to wild lands, it is clear that it has not been so applicable since the passage of the act of 1881.   Wild lands from their very nature have no rental value.   They are, of course, not subject to cultivation.   A tenant could not lawfully remove the timber therefrom nor use it in any way so as to affect the value of the standing timber, as, to box the same for turpentine purposes in case of pine timber; and such lands being always uninclosed, they would have no rental value as a range for cattle.   In counties where fences are required every one would have the benefit of range of wild lands, and in stock-law counties inclosure would be absolutely essential for purposes of range.

It is hard to conceive of a lot of wild land being so situated that any sane individual would pay anything for rent of the same.   If such were the case, however, under any circumstances, the instances would be so exceptional that it would not be presumed it was the intention of the General Assembly to continue in force a law requiring an effort to be made to rent such lands before offering them for sale for taxes, when there is nothing in the act relating to the subject of selling such lands for taxes which expressly continues such law in force, and the terms of the act positively provide for a sale, and inferentially for a sale only.   The judge refused the injunction upon the sole ground that the tax deeds under which the plaintiffs claimed were "void because of failure to comply with the provision as to rent or hire by the officer before the sale." While there were other questions involved in the case, the one just referred to is the only one passed on by the judge; and as we feel constrained to hold that the venerable and learned judge whose

decision is under review erred in holding that the plaintiffs' deeds were void for the reason above referred to, and thus find it unnecessary to determine the other questions presented by the pleadings, the judgment will be reversed, with direction that another hearing be had on the application for injunction, when each side may be heard again on all questions involved in the case, except the one settled by the judgment now rendered.

While the question is not raised in the present record, we deem it proper to call attention to the fact that there may be some doubt as to whether an execution issued by the tax-collector for taxes on unreturned wild lands is valid. Under that portion of the Political Code, § 821, which is quoted above, it is made the duty of the "receiver of tax returns" to issue executions against wild lands which have not been returned for taxes. The part of the section of the code referred to above is an exact copy of the portion of the act of 1881 above quoted, and the codifiers, although they had before them the act of 1882, as appears from the marginal note to the section, have retained the words "receiver of tax returns," which appeared in the act of 1881, instead of inserting in lieu thereof the word "tax-collector," as provided in the act of 1882. See Acts of 1882–3, p. 47. In the case of *Leonard* v. *Pilkinton*, 99 *Ga.* 738, the attention of the court was not called to the fact that the codifiers had codified the act of 1881 and omitted the amendment of 1882. In the case of *Southern Pine Company* v. *Kirkland*, 112 *Ga.* 217, Mr. Justice Little calls attention to the fact that the act of 1881 was amended by the act of 1882, as well as that the code contained the provisions of the act of 1881, unaffected by the amendment of 1882, so far as it relates to the officer whose duty it is to issue the execution. We again call attention to this; but as the record contains no assignment of error which would authorize us to determine the question, we make no decision thereon.

*Judgment reversed, with direction. All the Justices concurring, except Little, J., absent.*