Hoffi-ieimer, J.
This was an action for money had and received. The amount claimed is $26,500 and interest from September 6, 1872. By agreement between the parties, a jury was waived and the cause was submitted on the evidence and the law.
Briefly the facts are as follows: In March, 1868, Susan B. Palmer, a widow, married Samuel Mills, a widower. No child was born of this union. Mrs. Palmer-Mills had no children by her first marriage, and Mr. Mills had a daughter, Ella Mills, the defendant in this action. Husband and wife and this daughter of Mr. Mills lived together until 1884, when Ella Mills married one John Miller. Samuel Mills died in November, 1897. Susan B. Mills died in January, 1898. The evidence shows that in August, 1867, Susan B. Palmer (widow) purchased real estate in the city of Cincinnati, and at the time of her marriage to Samuel Mills, in 1868, she still owned this property On June 6, 1870, Susan B. Mills, by deed, sold one parcel of said property to John Carlisle, trustee of Fannie C. Mendenhall; consideration, $20,500. On September 2, 1872, Susan B. Mills, by deed, conveyed to Victor Burnham the second parcel; consideration, $6,000.
It thus appears that Susan B. Mills owned a separate estate, and the evidence further shows, beyond any reasonable question, that within two or three years after her marriage the husband became possessed of the proceeds realized from the sale of the *59 wife’s property; that he handled all her money and securities; that he made investments, with her apparent consent, in his own name. No part of the principal seems to have been lost or consumed. The husband never rendered the wife any account, and he never paid the principal back to his wife. While he was handling the money, it is claimed by plaintiff’s witnesses that Samuel Mills admitted, on certain occasions, that he had money of his wife’s to invest, and also stated that “We don’t intend to use one dollar of the principal. We are going to live up to the interest; not one dollar of the principal” (Mary F. Reid, Record, page 7).
The evidence further shows that Samuel Mills died leaving an estate somewhat in excess of this claim. He left a will (Exhibit A), by the terms of which he provided for the payment of all debts, and provided for his wife in lieu of her dower. In substance, he provided that his widow should receive, from the income of his property, $75 a month during her life, with the right to occupy the rooms of their present residence until the expiration of the lease on the house, in 1900, and then to occupy the same from the expiration of said lease during her life, or in case the house should not be tenantable, that other suitable premises should be provided by his executrix, “so that she shall not want for anything. And my executrix is directed to appropriate and use such further sums as may be necessary, out of the estate, for her comfort and welfare; and this devise shall be in lieu of her dower in my property.” The will then provides that any portioii of the devise not so expended shall be governed by clause 3. Clause 3 is as follows:
“I give and devise to my beloved daughter Ella all the rest and residue of my property, real and personal, to her, her heir.s and assigns forever, subject only to the provisions of the following clause in the will.”
Then follows a provision that, in case Ella A. should predecease him, $20,000 is bequeathed to the son-in-law, and the residue to certain of his and his wife’s relatives.
*60 Samuel Mills, as stated, died November 24, 1897, and Ella Miller was appointed executrix. On January 10, 1898, Susan B. Mills, then a paralytic of over eighty years of age, elected to take under the will. Ten days thereafter she died, and among her effects was found a will which had been executed by her two years before her marriage to Mr. Mills, but which had never been canceled or revoked. Plaintiff herein was appointed administrator of the estate of Susan B. Mills, with the will annexed. On December 7, 1898, he presented a written statement of his claim amoruiting to $26,500 in favor of the estate of Susan B. Mills, against the estate of Samuel Mills. The claim was rejected by the executrix of Samuel Mills. Accordingly suit was brought August 12, 1899, for said sum with interest from September 6, 1872, for money had and received by said Samuel Mills for the use of Susan B. Mills.
This contest, therefore, is between the blood relatives and beneficiaries of Susan Palmer-Mills on the one hand, and Ella Miller, a step-daughter, on the other. Several defenses to plaintiff’s claim have been interposed. First, it was claimed the husband never received the property of Susan Palmer-Mills. Then it was urged that, if he did receive it, there was a presumption of payment arising from lapse of time. The statute of limitations was also pleaded, as was laches, estoppel and the election by the widow (Susan Palmer-Mills) to 'take under the will of her husband. All these matters were urged in bar of the claim. Birt the real defense, although seemingly inconsistent with the general denial, was that the wife, during her lifetime, had made a gift of this property to her husband. Upon this proposition the case turns upon a rule of evidence, the proper placing of the burden of proof, and likewise the quantum of evidence necessary to sustain it.
The defense that the husband never came into possession of the property seemed to have been practically abandoned early in the case, and defendant contended that the married woman’s acts, in force at the time the husband acquired possession of the wife’s property, the Key act, of 1861 (58 O. L,, 54, 55), *61 and its modification in 1871 (68 O. L., 48, amending paragraph 2 of the act of 1861) had the effect of making Mrs. Mills a feme sole with reference to her separate property, and that she conld do with it as she pleased, give it to anybody she pleased, with her assent in the one ease (the Sixth street property), and her express assent in the other (the George street property). And that, as it appears, she did assent to her husband’s getting possession, the law, because of the great lap.se of years, the wife’s conduct and the inference to be builded thereon, would imply an assent to ownership. In other words, a gift would be presumed, and the burden would be on the wife, or those claiming under her, to negative a gift.
The claim of plaintiff, however, is diametrically opposed to this contention, and it is urged that where the husband acquired possession of the wife’s separate estate, as did Samuel Mills, the law, in the absence of direct evidence to the contrary, would presume that this possession was as agent or trustee for the wife, or that it was a loan, and that neither his possession nor the wife’s assumed assent, nor her silence even up to his death, singly or collectively, suggest a circumstance from which the law will permit an inference of a transmission of title to be drawn in favor of the husband’s estate. On the contrary, it is claimed the law will presume that the wife was and intended to remain his creditor.
Let us first consider the meaning and effect of the statutes involved. The purpose of the remedial or enabling statutes, it seems, was to furnish a shield to a feme-covert — to give her a separate estate; without the statutes she would still have had a general estate. When, then, it is evident that she has a separate estate, the mere physical possession of it by the husband, whether with or without her consent, express or implied, is not to be asserted to her prejudice, unless it appears the assent or the express assent was an assent to his becoming the absolute owner of the estate. In other words, it is recognized by all the authorities that the technical words “reduction to possession” as used in the statutes do not refer to the mere physical possession *62 alone. Such words are held to mean that the title or ownership must be transmitted, as well as the mere possession of the thing. Thus it is seen, at common law, a husband might take possession without reducing to possession. Session v. Trevitt, 39 O. S., 259, 266, 267; Pierson v. Smith, 9 O. S., 554, 558. See last paragraph in 15 Am. & Eng. Enc. of Law, 2d Ed., 826, notes 9 to 12, 827, notes 1 to 3.
And he might effect a reduction to possession without the assent of the wife. Under enabling statutes such as ours, the husband could still, with the wife’s assent, take.possession without reducing to possession. The “reduction to possession” (ownership), however, can not be made without her assent (1861), or express assent (1871). The acts of 1861 and 1871 deal with this reduction to possession. They provide that, with the wife’s assent in the one case, or her express assent in the other, the title, as well as the possession, may be transmitted. If the statute were to be otherwise translated, and from mere physical possession coupled with inferences, arising from lapse of time, the wife’s silence or conduct might take the place of proof that the husband’s possession was as absolute owner, and that a transmission of title had taken place, a practical nullification of the statutes would thus be effected. The courts, however, understanding that such statutes were for the protection of á married woman, and recognizing that possession by the husband may as well be in the,capacity of agent or trustee as that of owner, place'the burden on the husband to prove not only possession with assent but reduction to possession, that is, assent to his absolute ownership as well. Regardless, then, of the wording of particular enabling statutes of any state (and this is shown by the uniformity of decision notwithstanding varying language of the statutes of the different states), the general policy of the law has been, with reference to the wife’s separate property in the possession of the husband, to raise a presumption that he held it as agent or trustee — not as owner. And rather than infer a gift, the law presumes just the contrary, with this recognized difference, however, that where the husband is in receipt of an income, as contra distinguished from a use of the *63 capital (and in the case at bar the husband had the capital), then the onus is on the wife to prove that her husband received the income by way of loan, and not as a gift.
Standard text-writers and the overwhelming weight of English and American authority announce this to be the rule. No pretense is here made to refer to all the authorities. A few will suffice. An exposition of the English rule is had in Lush on Husband and Wife, 2d Ed., 1896, pages 196, 197 u
“The result of the authorities to the present time appears to be that in the ease of the receipt of the capital of the wife’s separate property by her husband, the onus of proof of a gift by the wife to the husband lies upon him and must be clearly established, or else the husband will be held to be a trustee for the wife. In the case of the receipt by the husband of the income of the wife’s separate property, the onus lies on the wife, save perhaps as to the last year’s income, and she must establish clearly and conclusively that her husband received her income by way of a loan.”
As long ago as 1792, Lord MacClesfield declared that—
“Where a married woman held a separate estate and her husband got possession of any part of its principal, he was bound to account to her for it; but that where she permitted him to receive the income of her estate and to use it, without making the least objection to him, or to the debtor who paid the money, or to her trustees, it should be presumed that she consented that he should use the money as his own.” Powell v. Hanke, 2 P. W. M. S., 82; Denny v. Denny, 123 Ind., 240, 244; Jones v. Davenport, 44 N. J. Eq., 33.
In Rowe v. Rowe, 2 DeGex & Smales, 294, it was said:
“A husband, with his wife’s concurrence, received a legacy bequeathed upon trust for her separate use. Some time afterward he made his will bequeathing to her a much larger sum and directing his executor, who was also his residuary legatee, to pay all his debts — Held:
“1. That the concurrence of the wife in the receipt of the legacy by the husband was not a gift of it to him.
“2. That a bequest by the husband to the wife was not'a satisfaction of the wife’s claim against his estate in respect of the first mentioned legacy.”
*64 See, also, Woodward v. Woodward, 3 DeGex, J. & S., 672; In re Blake (Blake v. Power), 60 Law Rep. (Law Times Report), 663, 664, where English cases to date of decision (1889) are collated; 1 Perry on Trusts, 5th Ed., Section 127, pages 166, 167, 163, 2d column of notes to Section 126; 2 Perry on Trusts, 5th Ed., Section 666; Harris on Contracts of Married Women, Section 576; Stickney v. Stickney, 131 U. S., 277, syllabi 2 and 3, and pages 238, 239 of opinion; Garner v. Second National Bank, 151 U. S., 420, 433; In re Neimann, 109 Fed., 113; Burns v. Dougherty, 120 Fed., 526, 528; Patten v. Patten, 75 Ill., 446, cited in Hackman v. Adams, 50 O. S., 305, 311; Adoue v. Spencer, 62 N. J. Eq., 782 (reported with elaborate note in 56 L. R. A., 817, showing development of the law on this subject).
At page 820 the annotator says—
“Under the various married women’s acts securing the separate estate of married women to them, with the exception noted infra, 11 e. 2, (as to income and profits), the receipt of the money or property of a wife by her husband is presumed to be for her use, and the burden is cast upon him to remove such presumption by evidence establishing a gift or purchase or that it has been expended or used in a mode or for a purpose authorized by her.”
At page 845, ibid, the writer says:
“Under the various married women’s acts, however, a different rule obtains. By them the wife’s property rights are preserved as against her husband, and a receipt by the husband of-his wife’s property is presumed to be for her use, and the burden rests with him to rebut such presumption and establish a gift to him or a purchase by him. And to establish this he must prove assent on the part of the wife not only to possession on his part, but also to his absolute ownership.”
See also In re Leeds & Company, Ltd., 49 L. A. Ann., 501, wherein it was said:
“It is elementary that the mere acceptance and personal use or investment in his own name of the wife’s funds creates indebtedness in her favor and against the husband.”
*65 And in Turner v. Guttwals, 15 Dist. of Col. App. Cas., 43, Chief Justice Alvey said:
“Where the wife makes a claim against the estate of her husband, and no creditors of the latter are concerned, quite a modified principle applies for the protection of the wife as against the husband or his estate. In such ease the receipt and use of the money belonging to the wife by the husband gives rise to a prima facie presumption that the husband was acting as agent or trustee to the wife, and he or his estate will be accountable. This is established by the case of Stickney v. Stickney, 131 U. S., 227, 240. Also founded on the construction of the Married Women’s Act of April 10, 1869.”
Similar rulings will be found in a great many American jurisdictions. Some few cases hold to the contrary.
The case of Pawlet v. Delavel, 2 Ves. Sr., 662, relied on by counsel for defendant, is not authority to the contrary. That was an early ease holding that a wife can make a gift to her husband, and the generalities indulged in in the opinion are subsequently criticized in 3 Ves. Sr., Belt’s Supp., star page 437, 459.
Other cases cited by defendant are cases which relate to “income” (for distinction see Lush on Husband and Wife, supra), or have to do with the rights of third parties (e. g.- creditors), and the position as contended for by defendant and as announced in the early case of Black v. Black, 30 N. J. Eq., 215, I find is not the doctrine of that state. The later New Jersey doctrine is found in Adoue v. Spencer, 62 N. J. Eq., 782, and Brady v. Brady, 58 Atl., 231 (67 N. J. Eq.).
In short, then, the statutes of 1861 and 1871 are to be read with the view of ascertaining whether they had the effect of creating a wife’s separate property. If so, and the husband secured the possession, then the burden would be on him to establish the wife’s assent to his ownership. If such was not the effect of the statutes of 1861 and 1871, then the Legislature did a vain thing in enacting them, and .by a rule of evidence, the husband would be enabled to accomplish, notwithstanding the statutes, that which he had plenary power to do before *66 their enactment, under the' common law. Instead of enlarging the married women’s rights, she was left where she stood prior to the passage of those statutes. Placing the burden on the husband, however, gives vitality to the statutes and affords married women the protection no doubt contemplated by the law-making power.
Is the claim barred by the statute of limitations, or by any-think analogous thereto? Yokum v. Allen, 58 O. S., 280, and Ham v. Kunzi, 56 O. S., 531, seem to me to foreclose argument as to the statute of limitations. Under the facts here presented, the statute could not begin to run during coverture, and to hold that there was a presumption of payment because of lapse of time, or that the wife’s silence and conduct during all the years of the husband’s possession constituted laches and that she intended a gift, or is estopped because of her failure to exercise her rights during coverture, would be to override the statute of limitations and thus permit, by indirection, what may not be done directly.
In Franc v. Nirdlinger, 41 O. S., 298, a different rule might be indicated. That, however, was a case involving the rights of third parties, and there is no question as to presumption of payment between husband and tuife decided. In my judgment, it is inapplicable to facts such as are presented by the record before ms. Moeckel v. Hein, 46 Mo. App., 340 (which refers to Franc v. Nirdlinger, and Stone v. Bank, 81 Mo. App., 9, are cases that show that Franc v. Nirdlinger, however applicable when rights of third parties are involved, is not applicable when the question arises as between husband and wife.
In Newton v. Taylor, 32 O. S., 399, court says, at page 414—
. “ It will not do to say that as soon as. the wife obtained the loan and handed it over to him (the husband), from that moment it became his personal property by virtue of his marital rights.”
And again, at page 415—
“We do not think that lapse of time should bar Mrs. Taylor from asserting her rights. She did so shortly after her husband’s *67 death. She was not bound to do so before at the risk of creating trouble in the family.”
In Second National Bank v. Merrill, 81 Wis., 332, at page 336 the court says:
“The statute of limitations does not run against a wife, and presumption of payment by lapse of time does not prevail against her. She ought not to be compelled to treat her husband as a stranger. Any other policy would beget disagreement and distrust.”'
In Barnett v. Harshbarger, 109 Ind., 410, it is said, at page 415:
“It is not for the good of the world that a wife should be compelled to distrust her husband and deal with him as she would a stranger, in order that she may not have her rights swept away by the lapse of time. ’ ’
In Fawcett v. Fawcett, 85 Wis., 332, at page 336 it is said:
“It is now thoroughly well settled, by authorities too uniform to require citation and too numerous to cite here, that, as between the trustee of an express trust cognizable only in a court of equity, and his cestui que trust, concerning matters connected with the trust relation, no statute of limitation, nor any bar by analogy thereto can be relied upon to defeat the execution of the trust, unless the full period of limitation has elapsed since the denial or repudiation by the trustee of the trust obligation. ’ ’
In Paschall v. Hinderer, 28 O. S., 568, at page 580 the court says:
‘ ‘ He nowhere claims that his possession was openly and avowedly in repudiation of his trust relation to the property. Until he does so, the occupancy will be presumed to be in fulfillment of the trust, and not in derogation of it.”
And near the bottom of the same page:
“What constitutes a stale equity is a vexed question hardly susceptible of accurate definition. Length of time alone is not a test of staleness.” See, also, Rucker v. Maddox, 114 Ga., 899; *68 Teasley v. Bradley, 110 Ga., 497; 22 Am. & Eng. Enc., 2d Ed., 1243, notes 2 and 3.
It is assumed, in the case at bar, that the wife assented to the husband’s possession. Such being the case, it is presumed, in law, that it was possession in a trust capacity, and this capacity continues until the contrary appears; and the authorities cited show that neither the statute of limitations, nor anything analogous thereto, can prejudice the wife’s position.
Did the wife’s election to take under her husband’s'will bar plaintiff’s claim? I think this question also must be answered in the negative. It will be remembered that the will of Samuel Mills provided for.the payment of debts, and then made provision in lieu of dower in Ms property. The will was certainly not ambiguous, nor was there any room for construction. It is plain on its face. The election of the widow was to take the benefit of clause 2 rather than her dower interest in Ms estate. The wife did not elect as creditor,' but as widow, and there was nothing on the face of the will “to indicate the unmistakable intention of Samuel Mills to dispose of property” belonging to his wife. Her election, then, could not have referred, in any way, to her property. And consequently her election as widow was not incompatible with her claim as creditor, and it could not prejudice her rights as such. Since the will does not, on its face, clearly and unmistakably show that the testator was undertaking to dispose of the property of Mrs. Mills, it would make no difference what Mrs. Mills may have said at the time of her election, nor would any extraneous fact be permitted to alter the record of the election. The record speaks as to what her election was, and her rights were fixed. As stated, under the law, she must be held to have elected to take the provisions of clause 2 instead of her one-third interest or dower. To hold otherwise would be, in effect, to undertake to make a new will for Samuel Mills. For when he said that he desired his debts to be paid, to quote the language of Judge Mcllvaine in Bowen v. Bowen (34 O. S., 164):
“It would indeed be hazardous to say that the testator, when he gave this direction, did not intend to include the debt of his *69 wife, which was by far the largest outstanding and undisputed debt against him or his estate.5 ’
In 1 Underhill on Wills, Section 451, it is said:
“The same rules and principles are applicable to a legacy given by a husband to a wife to whom, at the date of the execution of the will, he is indebted. A provision in the will, attached to a gift of real or personal property to the widow, by the testator, that it is in lieu of doiver and of all other claims against the interest in the estate of the testator, will not be sufficient to constitute a gift and satisfaction of a debt which at the date of the will is due from the testator to his wife, particularly when the will also directs that the debts of the testator shall be paid and. makes provision for that purpose.”
In Denny v. Denny, 123 Ind., 240, the court makes clear the language that is necessary to be employed where one undertakes to dispose of property other than his own, to call for an election. See, also, Konvalinka v. Schlegal, 104 N. Y., 125; Taylor v. Taylor, 4 Jur. (U. S.), 1218; Russell v. Mintun, 42 N. J. Eq., 123.
And in Charch v. Charch, 57 O. S., 580, the court, to-my mind, lays down the rule that must govern the state of facts presented in the instant case:
“If the provision'in question, taken in connection with the whole will, will reasonably admit a construction not involving a disposition of such property, that construction must prevail. In order to create the necessity for an electon, there must appear upon the face of the tvill itself, a clear, unmistakable intention on the part of the testator to dispose of property which is in fact not his own. The language must be so clear as to leave no doubt as to the testator’s design.”
See, also, Rucker v. Maddox, 114 Ga., 889; 11 A. & E. Enc., 2d Ed., 65, 68, and cases under Note 3, page 68, Owsley v. Price, 4 C. C.—N. S., 273, wherein Hibbs v. Ins. Co., 40 O. S., 543, relied on by the defendant herein is distinguished and Charch v. Charch is followed.
There remains but one question: Has the husband, or defendant herein, who stands in his place, sustained the burden? Has *70 assent to ownership been proven by direct evidence? What amount of evidence is required? Will a mere preponderance suffice, or must the evidence to establish the gift be clear and convincing ?
Even if the mere preponderance would be sufficient to establish a gift inter vivos, I can not say that that preponderance lies with the defendant. Since the wife was not bound to speak ‘ ‘ at the risk of creating trouble in her family” (Newton v. Taylor, supra), her silence throughout all these years could not be construed against her. And while she may have assented to possession, nothing may be inferred from that as an assent to ownership. An assent to ownership may not be implied from mere silence. She was not compelled to demand her property, and although she did many things that unquestionably show assent to the husband’s possession, I do not think it can be said that there is anything to indicate her intention to let her husband become absolutely possessed of the title. On the other hand, we have the admissions of Samuel Mills, after he acquired possession, that he had money of his wife’s to invest, and also, that it was intended to live up to the'interest, and not the principal. Even if these admissions are to be accorded but little weight, because of the interestedness of the witnesses, the lapse of time, the fact that they may have referred to other property, although it does not appear that the wife had any other property, what is there to indicate assent on the part of the wife to ownership in the husband? The statements made during Mr. Mills’s lifetime by Mrs. Mills herself “that everything I have is pa’s” or “everything I have is Ella’s,” might well be taken to mean assent to a mere possession, and arc not sufficiently definite to indicate transmission of title to either one. Such language may also be taken to refer to a loan. As illustrating the use of the phrase “everything is pa’s” or “everything is Ella’s”, we may take the evidence of Charlotte G-. Miller, record page 16, “I know when her daughter, Mrs. John Miller (Ella), was using some of her things or wearing some of her clothes, Mrs. John Miller would say “this is ma’s”, she would say “no, everything I have is Ella’s.” Could such language fairly be *71 construed to imply “fixed intention by the donor to irrevocably divest herself of dominion or control of the subject-matter at that very time”? Allen-West Commission Company v. Grimbles, 129 Fed., 287. See, also, 136 N. Y., 177, 180.
And yet such are the elements that are necessarily the test of a gift. The same test is to be applied to other alleged declarations of Mrs. Mills. For example, when she said, “There are not two pocketbooks in this family; we have only one, and that is pa’s,” such statement might well be taken to indicate a joint ownership; and when Mrs. Mills stated “I am glad I have nothing to bother me that way” (referring to houses to rent), the language might just as well be taken to mean that she was glad she didn’t have to bother in managing property, as to say that it was a declaration that she had absolutely no interest, title or ownership in any property.
For construction placed on similar declarations and phrases where it was claimed they amounted to language necessary to establish a gift, and, were held insufficient, see Thompson v. Lynch, 29 Cal., 189, 191, 192; White v. Warren, 120 Cal., 332.
In other words, these alleged declarations can not be held to have established her intention to deprive herself, irrevocably, of authority or ownership of the property in question. See Burns v. Burns, 132 Mich.; 441; Dresser v. Zadreskie, 39 Atl., 1066; Thompson v. West, 56 N. J. Eq., 660, 664.
The plaintiff, however, contends that to prove a gift inter vivos the evidence should be clear and convincing, and reliance is had on Flanders v. Blandy, 45 O. S., 180. If such rule is to be applied, then certainly the burden of proof is not sustained.
I am free to say that I have not reached the conclusion in this case without some reluctance. The evidence shows that the relations of Mrs. Mills 'and her step-daughter and husband, throughout all the years, were cordial. And yet I can not say that the same was not true with' reference to those who now claim as her beneficiaries. To hold ■ other than I have would mean arbitrarily, or through sympathy, to nullify a will solemnly and deliberately made and executed and which Mrs. Mills, a *72 very intelligent woman, not only never destroyed or revoked, but seems to have preserved throughout all these years. Holding as I do, I am compelled to give effect to a will which, despite the pleasant relations between Mrs. Mills and her step-daughter, takes no notice of the step-daughter; necessarily so, as it was executed probably before Mrs. Mills thought of her marriage to Mr. Mills. Unless it shall be determined that Franc v. Nirdlinger is in point, and Yokum v. Allen shall be held not applicable, so that the wife was compelled to speak, or her silence or conduct or the fragmentary declarations made by her shall be held to be sufficient to establish a gift inter vivos, sufficient to prove assent to ownership divesting Mrs. Mills absolutely and irrevocably of all interest and title to the property in question, judicial subordination is such that I feel no other course is open, and I must enter judgment for plaintiff for $26,500, with interest from the death of Mr. Mills, November 24, 1897; and it is so orderecl.
Wm. C. McLean and Edward Barton, for plaintiffs.
Moses F. Wilson, John G. Mealy, Malcolm McAvoy, for defendants.